IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.                                           Civ. 03-0600 LH/LCS
                                              Cr.  02-1158 JP

JORGE LUIS ARVIZU-DEL RINCON,

      Defendant-Petitioner.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court upon Arvizu-Del Rincon's ("Arvizu") Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28. U.S.C. § 2255 filed May 15, 2003. (Doc. 81) and his Supplement to the Motion filed July 21, 2003 (Doc. 85).[1] Arvizu, currently incarcerated and proceeding *pro se,* attacks the plea entered on February 19, 2002 and the Sentence entered on September 3, 2002, in the case styled *United States of America v. Jorge Arvizu-Del Rincon,* and numbered CR 02-158 JP, United States District Court for the District of New Mexico. The United States Magistrate Judge, having considered the arguments of counsel, record, relevant law, and being otherwise fully informed, finds that Gonzalez's Motion is well-taken and recommends that the **WRIT OF HABEAS CORPUS BE GRANTED FOR RESENTENCING PURPOSES ONLY**.

---

[1] All docket numbers correspond to *United States of America v. Jorge Arvizu-Del Rincon,* CR 02-158 JP.

**I.     Proposed Findings**

1.     On November 15, 2001, Arvizu was arrested near Hatchita, New Mexico when he was stopped by United States Border Patrol Agents. Doc. 1. The Agents gained consent from Arvizu to search the vehicle and found, in plain view, numerous wrapped bundles of contraband. *Id.* At the same time, Border Patrol stopped another vehicle that was driving in tandem with that of Arvizu's. The driver of that vehicle, along with another occupant of the vehicle, were also arrested and charged with aiding and abetting. *Id.* On February 5, 2002, Arvizu was indicted with:

- A.    one count of possession with intent to distribute 100 kilograms and more of Marijuana in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(B) [Count 1], and

- B.    one count of aiding and abetting in violation of 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 2 [Count II] (Doc. 44).

2.     On November 16, 2001, Robert J. McDowell, AFPD Attorney, was appointed to represent Arvizu. Doc. 4. On December 10, 2001, Carmen E. Garza entered an appearance on behalf of Arvizu and on December 12, 2001, the Honorable Karen B. Molzen, United States Magistrate Judge, relieved and discharged attorney McDowell from representing Arvizu. Docs. 21, 23. At his arraignment on February 8, 2002, Arvizu entered a plea of not guilty on both counts, and the trial was set on a trailing docket commencing on April 2, 2002. Doc. 47. Also on February 8, a change of plea hearing was set before the Honorable Joe H. Galvan, United States Magistrate Judge. Doc. 45.

3.     On February 19, 2002, Arvizu pleaded guilty to Count I, possession with intent to distribute 100 kilograms and more of Marijuana, pursuant to a plea agreement. Doc. 49 at 2. The Government was to move to dismiss Count II at the time of sentencing. *Id.* at 5. The plea agreement

made clear that the Court must impose a term "of imprisonment for a period not less than five (5) years" and that the defendant understood this term. *Id.* at 2. The agreement also stated that no downward departure from the sentencing guideline was appropriate and that the defendant agreed that he would not seek a downward departure. *Id.* at 3. The parties stipulated that the defendant was a minor participant in the offense and that he was entitled to a reduction of two levels from the base offense level of 26. *Id.* at 4. The parties further stipulated that Arvizu had demonstrated acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and that if he provided an oral or written statement to the United States Probation Officer who prepared the Presentence Report ("PSR") that he would be entitled to a reduction of three levels given that he could establish that entitlement. *Id*. Finally, the parties stipulated that "*If, but only if*, at the time of sentencing, the Court finds that the defendant has met all of the requirements of U.S.S.G. § 5C1.2(1)-(5), then, *but only then*, pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(6), the sentencing Court may impose a sentence below the five (5) mandatory minimum sentence in this case [commonly referred to as the 'safety valve']-- and reduce the defendant's offense level by two (2) levels, to level 19."[2] *Id.* The plea agreement

---

[2] According the United States Sentencing Guidelines, "the court *shall* [emphasis added] impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria. . .set forth below:

   (1)    the defendant does not have more than 1criminal history point, as determined under the sentencing guidelines. . .;
   (2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
   (3)    the offense did not result in death or serious bodily injury to any person;
   (4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise. . .;
   (5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of th same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement [this requirement to disclose all information to the government is commonly referred to as 'debriefing']." U.S.S.G. § 5C1.2(a)(1)-(5). *See also* 18

recounted that the parties understood the stipulations were not binding on the Court and that Gonzalez "knowingly waive[d] his right to appeal any sentence within the applicable guideline range..." *Id.* at 5. The Court ordered a PSR. Tr. 2/19/02 at 13.

4. On March 25, 2002, Arvizu filed both a Motion to substitute attorney Carmen Garza with Rita Nuñez Neumann ("Neumann"), Esq., as well as a Motion to withdraw his guilty plea. Docs. 55-56. The following day, Arvizu filed an Amended Motion to withdraw his guilty plea. Doc. 57. On March 27, 2002, the Honorable William Prince, United States Magistrate Judge, entered an Order granting Arvizu's motion to substitute attorney Garza with attorney Neumann. Doc. 60. A hearing on Arvizu's Motion to withdraw his guilty plea was set before the Honorable C. LeRoy Hansen, United States District Judge, on May 29, 2002. Doc. 72.

5. Given Arvizu's guilty plea only on Count I, possession with intent to distribute 100 kilograms and more of Marijuana, the PSR established Arvizu's base offense level at 26, just as stated in the plea agreement. PSR ¶ 12. *See* Doc. 49 at 4. The PSR contemplated five reductions from the base offense level, to a total level of 21, due to Arvizu's mitigating role in the offense as a minor participant as well as his acceptance of personal responsibility for his criminal conduct. PSR ¶¶ 15, 18-19. *See* Doc. 49 at 4. Arvizu had no juvenile adjudications nor any adult criminal convictions. PSR ¶¶ 21-22. As such, the PSR noted that Arvizu had no criminal history points and assigned Arvizu to Criminal History Category I. PSR ¶ 23. With a total offense level of 21 and a Criminal History Category I, Arvizu's guideline imprisonment range was 37 to 46 months. PSR ¶ 36. The PSR did not calculate a guideline imprisonment range for a total offense level of 19 and a Criminal

---

U.S.C. § 3553(f). While the plea agreement appears to give the *benefit* of a saftey valve reduction, the safety valve is a mandatory provision and if Arvizu met all of the requirements of the Guidelines, he would be entitled to a safety valve reduction even if it had not been included in the plea agreement.

History Category I, which would have been the total offense level if the safety valve reduction were granted by the Court at Sentencing. *See* Doc. 49 at 4. The PSR reported that the mandatory term of imprisonment required by statute for Count I of the indictment was five years. PSR ¶ 36. Should the statutorily required minimum sentence exceed the maximum guideline range, the statutorily required minimum sentence becomes the guideline sentence. U.S.S.G. § 5G1.1(b). Thus, the five year mandatory sentence, as required by statute, became the guideline sentence.[3]

6. On April 22, 2002, Ms. Neumann filed an objection to the PSR, though her objections did not go to either the base offense level, total offense level, or criminal history category. Doc. 66. Her objection was that Arvizu did not consent to a search of the vehicle. *Id.*

7. On May 29, 2002, Judge Hansen held a hearing on Arvizu's Motion to withdraw his guilty plea. Judge Hansen inquired whether Arvizu recalled the portion of the plea agreement that "stated that [his] sentence could be reduced below the five-year mandatory sentence if [he] talked with law enforcement?" Tr. 5/29/02 at 14. *See* U.S.S.G. § 5C1.2(a)(5); *see also* 18 U.S.C. § 3553(f). Arvizu stated that he did. Tr. 5/29/02 at 14. Judge Hansen went on to ask whether he had spoken to law enforcement as a result of the agreement. *Id.* at 14-15. Arvizu stated that he had not. *Id.* at 15. Counsel for the government, Randy M. Castellano, Esq., then asked why Arvizu had not agreed to speak with law enforcement. *Id.* Arvizu stated that he agreed to speak with law enforcement but that he had not done so. *Id.* Mr. Castellano asked Arvizu if Ms. Garza had scheduled an appointment so that he could speak with law enforcement and potentially reduce his sentence. *Id.* at 18. *See* U.S.S.G. § 5C1.2(a)(5); *see also* 18 U.S.C. § 3553(f). Arvizu answered

---

[3] As noted in Paragraph 3, the plea agreement made clear to defendant that the mandatory sentence was five years. *See* Doc. 49 at 2.

that Ms. Garza had scheduled such an appointment. *Id.* at 18.  Mr. Castellano asked Arvizu if he had fired Ms.Garza "just a couple of days before [he] was supposed to meet with law enforcement..." *Id.* at 15.  Arvizu answered affirmatively that he had fired Ms. Garza. *Id.*  Ms. Garza testified that she had explained to Arvizu both the minimum five year mandatory sentence as well as the potential qualification for a safety valve reduction if Arvizu attended a debriefing. *Id.* at 26-27, 32-33.  The debriefing thus did not occur. *Id.*  After hearing testimony from Arvizu and Ms. Garza, Judge Hansen stated that he was going to deny Arivzu's motion to withdraw and he also went on to say, "as a result of the actions that [Ms. Neumann] took. . .[Arvizu] did not debrief...and [Ms. Neumann] may have caused [Arvizu] great detriment.  I don't know if the government is willing at this point to go back to that piont in time and permit [Arvizu] to debrief, but it appears to me as if [Arvizu] suffered considerable detriment as a result of [Ms. Neumann's] failure. . ." *Id.* at 39.  An Order denying Arvizu's Motions to withdraw his guilty plea was filed on May 30, 2002.  Doc. 73.

       8.      On September 3, 2002, the sentencing hearing took place before the Honorable M. Christina Armijo, United States District Judge.  From the statements of Mr. Castellano and Ms. Neumann, it is clear that the government did allow Arvizu to debrief prior to the sentencing hearing. Tr. 9/3/02 at 4-5.  Mr. Castellano also indicated that Michael Law, the agent from the United States Customs Service ("CSA") who attended the debriefing, was present and according to Respondent, was willing to testify as to Arvizu's lack of candor at the debriefing. Tr. 9/3/02 at 4.  *See* Doc. 86 at 3-4.  The sentencing Judge stated, "I will note that there was a debriefing but. . . be unable to conclude one way or the other as to. . .whether or not this defendant was truthful." Tr. 9/3/02 at 5. The Court went on to sentence Arvizu to the five year minimum mandatory term of imprisonment. *Id.* at 7.  On September 12, 2002, the Honorable James A. Parker, United States Senior Judge, filed

a Judgment stating that Arvizu was not to possess any firearms, was to reenter the United States only after approval from the Attorney General, and was sentenced to five years of incarceration.  Doc. 80 at 2-3.

9.On May 15, 2003, Arvizu filed his Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 81) and his Supplement to the Motion, filed on July 21, 2003 (Doc. 85) and raised the following issue: whether Counsel was ineffective for failing to pursue a reduction of his mandatory minimum sentence via the safety valve provision.  *See*  U.S.S.G. § 5C1.2(a)(1)-(5); *see also* 18 U.S.C. § 3553(f).

10.The § 2255 Motion, filed within one year of the Judgment and Sentence, is timely under the Antiterrorism and Effective Death Penalty Act.  *See* 28 U.S.C. § 2255.  An evidentiary hearing is unnecessary because the motion, files, and records of the case conclusively show that Arvizu is entitled to relief. *See* 28 U.S.C. § 2255; Rule 8(a), Rules Governing Habeas Corpus Under § 2255.

11.Arvizu did not raise his claims on direct appeal.  In general, "[a] defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.'" *United States v. Talk*, 158 F.3d 1064, 1067 (10th Cir. 1998) (*citing United States v. Frady*, 456 U.S. 152, 167-68 (1982)).  Ineffective asssistance of counsel claims are an exception to this general rule and may be raised for the first time in a § 2255 proceeding. *See United States v. Galloway*, 56 F.3d 1239, 1240-41 (10th Cir. 1995).  Gonzalez's claims all involve ineffective assistance of counsel and they are not barred by the rule announced in *United States v. Frady*, 456 U.S. at 167-68.

12. In order to obtain habeas relief for ineffective assistance of counsel, "a Petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." *James v. Gibson,* 211 F.3d 543, 555 (10th Cir. 2000)(citing *Strickland v. Washington*, 466 U.S. 668, 688)(1984)). In order to demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

13. Counsel is stongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judment. *Strickland*, 466 U.S. at 690. The inquiry is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). A fair assessment of attorney performance requires a reviewing court to "eliminate the distorting effects hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Fox v. Ward*, 200 F. 3d 1286, 1295 (10th Cir. 2000); *see also Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995). Arvizu has satisfied both prongs of *Strickland*.

14. On July 9, 2003, Judge Parker filed an Order dismissing the ineffective assistance of counsel claim against Ms. Garza. Doc. 84 at 3. A discussion of this claim against Ms. Garza is therefore wholly unnecessary and I will not rehash the grounds for dismissal, as they are clearly laid out in Judge Parker's Order. The ineffective assistance of counsel claim against Ms. Neumann remains pending, as Judge Parker noted, "As to the claim against attorney Neumann, 'we must decide

whether it is reasonably probable that the proceeding's result--[a 60-month sentence]--would have been different [but for counsel's errors]." Doc. 84 at 2 (*quoting United States v. Wright*, 43 F.3d 491, 497 (10th Cir. 1994)).

15.     Arvizu asserts that Ms. Neumann was ineffective for failing to pursue a reduction of his mandatory minimum sentence via the safety valve provision. *See* U.S.S.G. § 5C1.2; *see also* 18 U.S.C. § 3553(f). The Tenth Circuit has held that "the specific conclusion that the defendant is or is not eligible for relief under § 3553(f)" is "reviewed for clear error." *United States v. Acosta-Olivas*, 71 F. 3d 375, 378 (10th Cir. 1995). Further, the burden is on the defendant to prove, by a preponderance of the evidence, the applicablilty of U.S.S.G.§ 5C1.2. *United States v. Verners*, 103 F. 3d 108, 110 (10th Cir. 1996). Finally, the requirement under U.S.S.G. § 5C1.2(a)(5) "is very broad, requiring disclosure of everything the defendant knows about his own actions and those who participated in the crime with him" and this section "has been termed the tell all that you can tell requirement." *United States v. Myers*, 106 F. 3d 936, 941 (10th Cir. 1997).

16.     It is clear from the record that before Ms. Neumann began representing Arvizu, Ms. Garza had already indicated to Arvizu that there was a possibility of a safety valve reduction. Tr. 2/19/02 at 14-15. Further at the hearing for the Motions to withdraw his guilty plea, Arvizu stated that he knew he would have to speak to the government about his offense in order to receive the safety valve reduction. *Id.* at 15, 18. Ms. Garza had scheduled such a debriefing on behalf of Arvizu; however, Arvizu fired Ms. Garza a few days before the debriefing was scheduled to take place and never attended the debriefing. *Id.* Judge Hansen noted that because Ms. Neumann failed to schedule a debriefing for Arvizu, her actions "may have caused him great detriment." *Id.* at 39. The fact that Ms. Neumann failed to seek a safety valve reduction or to schedule the necessary debriefing in order

9

to qualify for a safety valve reduction was deficient and outside the range of what a reasonable attorney would do.  However, even taking this deficiency into consideration, Arvizu was not yet prejudiced because he did have an opportunity to debrief before his sentencing hearing, as indicated by both Mr. Castellano and Ms. Neumann.  Tr. 9/3/02 at 4-5.  Thus, to the extent that Arvizu asserts that Ms. Neumann was ineffective failing to schedule a debriefing, he fails to meet the *Strickland* standard because he was in fact afforded the opportunity to debrief prior to sentencing and by attending the debriefing, he remained eligible for the safety valve reduction.

      17.     At the sentencing hearing itself, under both prongs of *Strickland*, Ms. Neumann may have rendered ineffective assistance of counsel.  The first four requirements of the safety valve provison under U.S.S.G. § 5C1.2 are not at issue.  U.S.S.G.§ 5C1.2(a)(1)-(4).  Arivzu met all four of these requirements: as outlined in the PSR, Arvizu did not have any criminal history points; he did not use violence in connection with his offense, his offense did not result in death or serious bodily injury to anyone, and since the PSR determined that he was a minor participant in the offense, he was certainly was not a ringleader.  PSR ¶¶ 15, 23.  *See* U.S.S.G.§ 5C1.2(a)(1)-(4).  The only issue remaining at sentencing was whether Arvizu "truthfully provided to the Government all information and evidence the defendant has concerning the offense."  U.S.S.G.§ 5C1.2(a)(5).

      18.     At the sentencing hearing, Ms. Neumann objected to the PSR as it was written before the debriefing took place.  Tr 9/3/02 at 3.  Ms. Neumann indicated that Arvizu had attended a debriefing and Mr. Castellano stated that Michael Law, the CSA who attended Arvizu's debriefing, was available and ready to testify that Arvizu had not been truthful at his debfriefing.  Tr. 9/3/02 at 4-5.  *See* Doc. 86 at 3-4.  Mr. Law did not testify.  At that point, the Judge stated, "I will note that there was a debriefing but. . . be unable to conclude one way or the other as to. . .whether or not this

defendant was truthful." Tr. 9/3/02 at 5.  According to the Tenth Circuit, the court must make a finding as to whether a defendant has met the requirement under U.S.S.G. § 5C1.2(a)(5) as to truthful debriefing; it cannot omit making this finding. *United States v. Gama-Bastidas*, 142 F.3d 1233, 1241 (10th Cir. 1998).  Further, "In order to assess whether a defendant has satisfied subsection 5, a court *must* determine the quality and completeness of all information furnished to the government by Defendant" [emphasis added]. *Id.*  Ms. Neumann should have objected because the Judge did not make a finding regarding Arvizu's truthfulness as required by *Gama-Bastidas*.  If she had objected, both Agent Law and Arvizu would have had the opportunity to testify regarding the debriefing and more specifically, Arvizu's truthfulness at the debriefing.  At that point the sentencing Judge would have been in a position to make a finding regarding Arvizu's truthfulness, "as the court's determination [under § 3553(f)(5); U.S.S.G.§ 5C1.2(a)(5)] is a fact-specific one and will often depend on credibility determinations that cannot be replicated with the same accuracy on appeal." *Acosta-Olivas*, 71 F.3d at 378.

19.     After hearing the testimony from both Agent Law and Arvizu, the Court could have made a finding that Arvizu was in fact truthful.  If it had made such a finding, Arvizu would have met all five requirements for the safety valve reduction, as contemplated in the plea agreement. *See* U.S.S.G.§ 5C1.2 and Doc. 49 at 4.  The Guidelines specifically state that if a defendant meets all five criteria "the court *shall* impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" [emphasis added].  U.S.S.G. § 5C1.2.  As the Tenth Circuit has noted, "It is a basic canon of statutory construction that the use of the word 'shall' indicates a mandatory intent." *Myers*, 106 F.3d at 941.  Thus, a judge has no discretion; if all five requirements are met under the Guidelines, the judge must impose a sentence without regard to any statutory

11

minimum.  If the Court made a finding that Arvizu was truthful, it could not have sentenced Arvizu to the five year minimum mandatory term, but could have instead followed the guideline imprisonment range which was calculated on the basis of a total offense level of 21 and Criminal History Category of I.  PSR ¶ 36.  The guideline imprisonment range was 37 to 46 months.  *Id.* However, the guideline imprisonment range undoubtedly would have been lower if the PSR had taken the safety valve reduction of two offense levels, to a total offense level of 19, into account as contemplated by the plea agreement.  Doc. 49 at 4.  In any event, the maximum guideline range for a total offense level of 21 would have been 46 months, which is clearly shorter than the 60 month minimum mandatory sentence that was given to Arvizu.

20.	Ms. Neumann's failure to object to the Court's refusal to make a finding as to whether Arvizu was truthful at his debriefing renders Ms. Neuman's counsel deficient, as it was error for the Court to not make such a finding.  Though counsel is stongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judment, this Court cannot think of any strategic reason for which Ms. Neumann may have foregone an objection.  *Strickland*, 466 U.S. at 690.  Her peformance was deficient and furthermore, her failure to object prejudiced Arvizu because if the Court had been asked to make a finding of Arvizu's truthfulness and had found him to be truthful, it would not have been able to sentence Arvizu to a term of longer than 46 months and perhaps less if the guideline imprisonment range had been less.  Thus, had the sentencing Judge found that Arvizu was truthful, as Judge Parker urged the Court to decide in his Order as to the claim against Ms. Neumann "'it is reasonably probable that the proceeding's result--[a 60-month sentence]--would have been different [but for counsel's errors].'" Doc 84 at 2 (quoting *Wright*, 43 F.3d at 497).

21.     Had the Judge made a finding that Arvizu was not truthful, Arvizu would not have met all five requirements under the Guidelines and would not have qualified for safety valve reduction. As such, the Court would have to apply the minimum mandatory sentence of five years, as contemplated by the plea agreement, and that was just as the Court did at the sentencing hearing. Doc. 49 at 4; Tr. 9/3/02 at 7.

21.     Ms. Neumann would, in all likelihood, have been unable to appeal the sentencing Judge's finding that Arvizu was untruthful at the debriefing, as Arvizu's plea agreement contained a waiver of appeal provision which stated that Arvizu "knowingly waived his right to appeal any sentence within the guideline range..." Doc. 49 at 5. At his plea hearing, Judge Galvan asked Arvizu if he signed his plea agreement voluntarily. Tr. 2/19/02 at 6. Arvizu indicated that he had and further indicated that the agreement was explained to him and that he understood its terms. *Id.* Judge Galvan went on to ask Arvizu if he understood that he waived any right to appeal a sentence within the guideline level. *Id.* at 6-7. Arvizu answered affirmatively. *Id.* Waiver of appeal provisions have been upheld by this Circuit if they are made knowingly and voluntarily, and the Court considers the waiver to be knowing and voluntary as long as it is stated as such in the plea agreement. *See United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir. 2001) and *United States of America v. Black*, 201 F.3d 1296, 1300-01 (10th Cir. 2000). The record indicates that Arvizu waived his right to appeal knowingly and that the entire plea agreement was entered into voluntarily. *See* Doc. 49 at 5-6; Tr. 2/19/02 at 6-7. Thus, if the Judge had made a finding that Arvizu was untruthful, he would not have qualified for the safety valve reduction and Ms. Neumann would probably have not been permitted to appeal this finding.

22.     In essence, Ms. Neumann's counsel was deficient because she should have objected

13

to the Court's denial to make a finding as to Arvizu's truthfulness at the debriefing. Had the Court made a finding that Arvizu was truthful, Ms. Neumann's actions would have prejudiced Arvizu, since he would have been entitled to a reduction in his sentence, according to the safety valve, that he did not receive. However, if the Court had made a finding that Arvizu was untruthful, Ms. Neumann's actions would not have prejudiced Arvizu, as he would not have been entitled to a reduction in his minimum mandatory sentence of five years, which is what he received at his sentencing. Tr 9/3/02 at 7. Further, Ms. Neumann probably would have been unable to appeal the sentencing Judge's finding that Arvizu was untruthful, as Arvizu validly waived his right to appeal a sentence within the guideline range. Though Respondent stated through its brief that Arvizu's debriefing did not go well and that Arvizu provided conflicting information, Respondent did not cite to any documents to support this proposition. Doc. 86 at 3. The Court will leave the sentencing Court to make the final determination of Arvizu's truthfulness at the debriefing, as it is most capable of making these sorts of factual findings based on credibilty.

### IV.   Recommended disposition

I recommend that Arvizu's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28. U.S.C. § 2255 filed May 15, 2003 (Doc. 81) in accord with his Supplement to the Motion filed July 21, 2003 (Doc. 85) be granted for the sole purpose of resentencing Arvizu and that due consideration be given to the safety valve, especially the requirement of truthfulness at the debriefing.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and

recommendations with the Clerk of the Unitesd States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**